UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:

SHEILA KISSINGER

    Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

    Defendant.
_____/

## COMPLAINT

SHEILA KISSINGER ("Plaintiff"), by and through her undersigned counsel, sues Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (Defendant), and states at all material times:

1. Plaintiff brings this action at law for damages.

2. Plaintiff sues Defendant in personam for its negligence.

3. Plaintiff has satisfied all conditions precedent or they are waived.

4. Plaintiff is a Florida citizen because she permanently resides in Florida, votes in Florida, is homesteaded in Florida, and pays taxes according to her Florida citizenship.

5. Defendant is a Florida citizen because it is headquartered in the state of Florida, all of the members of the CARNIVAL live, are incorporated in or have its principal place of business in Florida and that is where its "nerve center" is. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

### Venue

6. Venue refers to the location where a case will be heard. *In re Mickler*, 163 So. 2d 257, 259 (Fla. 1964); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939).

7. Venue differs from jurisdiction. *See Lane v. State*, 388 So. 2d 1022, 1026 (Fla. 1980); *Neirbo*, 308 U.S.

at 167-68.

8. A party can stipulate or consent to venue. *Smith v. Williams*, 160 Fla. 580, 587 (1948); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592-93 (1991).

9. It cannot be overstated that stipulating to personal jurisdiction or venue has no bearing on whether a court has subject matter jurisdiction over a claim. *See Pro-Art Dental Lab, Inc. v Strategic Group, LLC*, 986 So. 2d 1244, 1253-54 (Fla. 2008); *see also Leroy v. Great Western United Corp.*, 443 U.S. 173, 181 (1979).

10. Miami-Dade County is a proper venue for this case because Defendant is headquartered here. Plaintiff is not bringing a contractual claim. Plaintiff's sole claim is for damages base on negligence, in personam.

## Personal Jurisdiction

11. Personal jurisdiction refers to a court's adjudicatory authority over the parties brought before it. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *Int'l Shoe Co. v. State of Wash, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316-17 (1945).

12. Plaintiff submits to the personal jurisdiction of this Court by filing this lawsuit.

13. A party may submit or stipulate to the personal jurisdiction of a court. *Acquadro v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003); *Waterman Oy v. Carnival Cruise Lines, Inc.*, 632 So. 2d 724, 725-27 (Fla. 3d DCA 1994); *Petrowski v. Hawkeye Sec. Ins. Co.*, 35 U.S. 495, 496 (1956).

14. This Court has personal jurisdiction over Defendant because they are headquartered in Miami-Dade County, Florida. *See Royal Caribbean Cruises, Ltd. v. Payumo*, 608 So. 2d 862, 862-63 (Fla. 3d DCA 1992).

## Subject Matter Jurisdiction

15. Subject matter jurisdiction refers to a court's adjudicatory authority over the claims brought before it. *Atlantic Coast Line. Ry. Co. v. Fla. Fine Fruit Co.*, 93 Fla. 161, 165 (1927); *Balance v. Forsyth*, 62 U.S. 389, 389-90 (1858).

16. Neither a state court nor a federal court can hear a case for which it lacks subject matter jurisdiction. *Tompkins v. State*, 894 So. 2d 857, 859 (Fla. 2005); *Carnival Corp. v. Operadora Aviomar S.A. de C.V.*, 883 F. Supp. 2d 1316 (S.D. Fla. 2012) (dismissing case because federal court lacked federal question, admiralty, and diversity subject matter jurisdiction).

17. Subject matter jurisdiction cannot be created by waiver, inaction, or stipulation. *Winn & Lovett Grocery Co. v. Luke,* 156 Fla. 638, 641 (1945); *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985); *The Republic*, 62 U.S. 386, 388 (1858).

18. Federal courts have limited subject matter jurisdiction. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).

19. The Supreme Court "wisely adopted a presumption that every federal court is 'without jurisdiction' unless the 'contrary affirmatively appears from the record.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 692 (1986).

20. The Federal Court does not have subject matter jurisdiction over this case because of the parties involved and the claims made.

### Admiralty and Maritime Claims

21. Admiralty and maritime claims involve a body of law and words that are often misused and misapplied. *See, e.g., Freeport Sulphur Co. v. S.S. Hermosa*, 526 F.2d 300, 305 (5th Cir. 1976) (incorrectly calling an "allision" a "collision"); *see also Corby v. Kloster Cruise Ltd.*, 1990 WL 488464, at \*\*2-3 (N.D. Cal. Oct. 5, 1990) (incorrectly applying exculpatory clause in passenger ticket in violation of maritime law).

22. A common misconception is the application of maritime law means a court has admiralty subject matter jurisdiction. *See, e.g., Am. Dredging Co. v. Miller*, 510 U.S. 443, 446-47 (1994).

23. The application of maritime law does not affect a state court's subject matter jurisdiction over a negligence case. *E.g., Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex. 1993).

24. Not all claims that arise on navigable waters are subject to admiralty subject matter jurisdiction. *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1387 (11th Cir. 1982); *see also Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 118-19, 130-31 (2013) (dispute over houseboat on navigable water not within admiralty jurisdiction).

25. For example, federal courts have admiralty subject matter jurisdiction over maritime claims brought as a proceeding in admiralty. *J.P. v. Connell*, 93 F. Supp. 3d 1298, 1302

1. (M.D. Fla. 2015) (citing *Madruga v. Superior Court*, 346 U.S. 556, 560 (1954)); *The Moses Taylor*, 71 U.S. 411, 427-30 (1866).

26. However, state courts have original subject matter jurisdiction over negligence claims brought at law and in personam like Plaintiff's claims in this case, even when those claims arise on navigable water. *J.P.*, 93 F. Supp. 3d at 1302-03; *Royal Caribbean Cruises, Ltd. v. Cox*, 137 So. 3d 1157, 1158-59 (Fla. 3d DCA 2014); *Hyer v. Caro*, 17 Fla. 332, 350-62 (1879).

27. Conversely, federal courts do <u>not</u> have admiralty subject matter jurisdiction over negligence claims brought at law and in personam. *See The Belfast*, 74 U.S. 624, 644 (1868). That remains the law today. *J.P.*, 93 F. Supp. 3d at 1302; *Coronel v. AK Victory*, 1 F. Supp. 3d 1175, 1181 (W.D. Wash. 2014); *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1387 (11th Cir. 1982).

28. The only way a federal court could have subject matter jurisdiction over a negligence claim that arose on the water, and that was brought in personam and at law, is if there is diversity subject matter jurisdiction. *E.g.*, *In re Chimenti*, 79 F.3d 534, 538 (6th Cir. 1996).

29. When a negligence claim that arises on the water is brought at law, a plaintiff may choose to file a lawsuit against the defendant in personam in state court under the state court's original subject matter jurisdiction, or she could choose to file a lawsuit against the defendant in personam and at law in federal court under the federal court's original diversity subject matter jurisdiction. *E.g.*, *Coronel*, 1 F. Supp. 3d at 1181-85. There is no other way for any state or federal court to have subject matter jurisdiction over a negligence claim that arises on the water and that is brought at law and in

personam. *Id*.

### This Case Lacks Federal Diversity Subject Matter Jurisdiction

30. Federal diversity subject matter jurisdiction requires complete diversity of citizenship of the parties and requires that more than $75,000 to be in controversy.

31. Plaintiff and Defendant are Florida citizens so this case is not susceptible to federal diversity subject matter jurisdiction.

### This Case Lacks Federal Question Subject Matter Jurisdiction

32. Maritime claims, like the one Plaintiff brings in this case, do not present a federal question. *See, e.g., Am. Ins. Co. v. 365 Bales of Cotton*, 26 U.S. 511, 545-46 (1828).

33. That is because maritime claims "are as old as navigation itself" and do not "arise under the Constitution or laws of the United States." *Id*.

34. The maritime nature of a case simply does not provide a ground for federal subject matter jurisdiction. *Armstrong*, 667 F.2d at 1388; *Assiff v. Carnival Corp.*, 930 So. 2d 776, 778 (Fla. 3d DCA 2006).

35. Plaintiff sues Defendant at law and in personam for negligence, so this case is not susceptible to federal question subject matter jurisdiction. *Deroy v. Carnival Corp.*, 18-CV-20653-UU (S.D. Fla. 2018).

### This Case Lacks Federal Admiralty Subject Matter Jurisdiction

36. Federal courts do not have admiralty subject matter jurisdiction over negligence claims brought at law and in personam. *See The Belfast*, 74 U.S. at 644; *J.P.*, 93 F. Supp. 3d at 1302; *Coronel*, 1 F. Supp. 3d at 1181; *Armstrong*, 667 F.2d at 1387.

37. Plaintiff sued Defendant in personam and at law for negligence, so this case is not susceptible to admiralty subject matter jurisdiction. *Deroy v. Carnival Corp.*, 18-CV-20653-UU (S.D. Fla. 2018).

### In Personam Claims and In Rem Claims

38. When a person is injured in an incident like Plaintiff in this case, the injured person can sue the

responsible parties in personam in a court that has personal jurisdiction over the defendant parties, subject matter jurisdiction over the case, and is the proper venue.

39. The cost for initiating an in personam lawsuit is a few hundred dollars.

40. The injured person could bring a libel in rem against the vessel if the vessel were negligent. An in rem proceeding is an action in admiralty and can only be brought in federal court. The person bringing an in rem proceeding is called the libellant. An in rem proceeding involves having a federal marshal literally arrest the ship. *E.g.*, Warrant to Seize a Vessel, *Stumpf v. Carnival PLC*, No. 12-CV-00099 (S.D. Tex. Mar. 30, 2012). Arresting a vessel is a much more complicated and expensive process. An improper arrest of a vessel can expose the libellant to significant penalties.

41. An admiralty proceeding in rem "is not a remedy afforded by the common law; it is a proceeding under the civil law." *The Moses Taylor*, 71 U.S. at 431.

42. A negligence case brought against a defendant in personam and at law, like this case, is not an action in admiralty and is not within the admiralty subject matter jurisdiction of the federal courts. *Id.*; *Armstrong*, 667 F.2d at 1388

## Master of Claims

43. A plaintiff is the master of her claims and decides which claims to bring and which remedies to seek for a wrong. *See* Fed. R. Civ. P. 8(a); Fla. R. Civ. P. 1.110(g).

44. A plaintiff is not "compelled to proceed in the admiralty at all" and "may resort to [her] common-law remedy in the state courts." *Norman v. Switzer*, 93 U.S. 355, 356 (1876).

45. In this case, Plaintiff chooses to sue Defendant at law and in personam for negligence.

46. It is the claims made, not the claims that could have been made, that determine whether a court has subject matter jurisdiction over the dispute brought before it. *Caterpillar, Inc. Williams*, 482 U.S. 386, 398 (1987); *see also Perry v. Merit Sys. Prot. Bd.*, U.S. 137 S.Ct. 1975, 1984 (2017); *Donzi Marine Corp. v. Roscioli Int'l, Inc.*, 596 So. 2d 146, 147 (Fla. 4th DCA 1992); *In re Motor Ship Pac. Carrier*, 489 F.2d 152, 157 (5th Cir. 1974); *Ernst & Ernst v. United States*

*Dist. Ct., So. Dist. Tex.*, 439 F.2d 1288, 1293 (5th Cir. 1971); *Jett v. Zink*, 362 F.2d 723, 730 (5th Cir. 1966); *Wadkins v. Campbell*, 156 So. 2d 887, 889 (Fla. 2d DCA 1963); *Mexican Cent. Ry. Co. v. Eckman*, 187 U.S. 429, 433-34 (1903). The question of whether federal subject matter jurisdiction exists "depend[s] on the particular claims a suitor makes in a state court-on how [she] casts [her] action." *Pan Am. Petro. Corp. v. Sup. Ct. of Del. in and for New Castle County*, 366 U.S. 656, 662 (1961); *see also Foster v. Chatman*, U.S. 136 S. Ct. 1737, 1745 (2017) (subject matter jurisdiction determined by claims made).

### Defendant's Passenger Contract

47. Plaintiff is not bringing a contractual claim for damages. Plaintiff's sole cause of action for damages is based on negligence. Plaintiff merely references some parts of Defendant's Passenger Contract to explain why the Federal Court does not have subject matter jurisdiction over the claims in this lawsuit.

48. Defendant's passenger contract requires passenger injury cases like this one to be "litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Court of any other county, state or country." (Passenger Contract ¶ 13.)[1] (emphasis added).

49. Note, the question of subject matter jurisdiction turns on the contents of the passenger's lawsuit, not the nature of the casualty, not some hypothetical claim that could have been brought; it is the actual claims made in the lawsuit that control where suit must be filed.

50. Thus, Defendant acknowledge the federal courts will not have jurisdiction over every lawsuit between them and a passenger.

51. That is the language Defendant chose to put in their Passenger Contract.

52. Defendants cannot create subject matter jurisdiction for any court through the Passenger

Contract. *Winn & Lovett Grocery Co.,* 156 Fla. at 641; *Fitzgerald,* 760 F.2d at 1251; *The Republic,* 62 U.S. at 388.

53. Defendant cannot deny Plaintiff the right to a trial by a court of competent jurisdiction. 46 U.S.C. § 30509(a)(1)(B).

54. That is why Defendant have that alternative lawsuit filing provision in the contract.

### Cases Incorrectly Appearing to Address the Issue in this Case

55. Carnival *v. Shute* held a forum selection clause in a ship's passenger ticket was enforceable. 499 U.S. 585, 596-97 (1991). *Shute* does not require Plaintiff's negligence claims against Defendant in personam and at law to be filed in federal court. *Shute* does not approve limiting the Plaintiff's forum to the Federal District Court. The ticket contract approved by the Court in *Shute* contained **venue** provision which required suits against Carnival be filed in the State of Florida.

56. Respectfully, *Leslie v. Carnival Corp.* is a good example of judges and lawyers falling prey to the misuse and misunderstanding of the words and concepts that apply to negligence claims that arise on the water. 22 So. 3d 561, 567 (Fla. 3d DCA 2009). *Leslie* quotes the contractual language allowing for suits to be filed in state court in Miami-Dade County but fails to grasp the importance of that language. *Id*. at 562. *Leslie* states in a conclusory fashion that many injured passengers will be forced to file on the admiralty side of federal court. *Id*. at 564. However, *Leslie* fails to discuss that it is the claim presented that determines whether a court has subject matter jurisdiction. *See id. passim*. *Leslie* contains no discussion of the difference between in rem and in personam claims, or libel claims versus claims brought at law, or how those variables affect subject matter jurisdiction. *See id. passim*. The dissent in the *Leslie* rehearing ruling comes so close to recognizing the distinction made in this document. *Leslie v. Carnival Corp.*, 22 So. 3d 567, 577-78 (Fla. 3d DCA 2009).

57. *Newell v. Carnival Cruise Lines* dismissed a personal injury lawsuit "because the federal court

---

[1] Plaintiff was not provided with a passenger ticket contract. The representations made herein are based upon a passenger ticket contract obtained by counsel for

ha[d] admiralty jurisdiction over the case." 180 So. 3d 178, 179 (Fla. 3d DCA 2015). Respectfully, that was an incorrect statement. Newell sued Carnival at law and in personam in a Florida court. Therefore, Newell's claim was not a claim in admiralty that fell within the admiralty jurisdiction of the federal courts, and the dismissal and its affirmance were wrong. *Newell* incorrectly states, "Because the ticket contract between the parties mandates that where federal admiralty jurisdiction exists, Newell was required to bring her action in the United States Federal Court, and the trial court properly dismissed Newell's state court complaint with prejudice." *Id.* at 183. Defendants' passenger contract states it must be sued in federal court when the federal court has subject matter jurisdiction over the lawsuit that is filed. (Passenger Contract ¶ 12.) The Passenger Contract does not state whether a passenger must bring a claim in personam or in rem. It simply states that if the federal court has subject matter jurisdiction over the claims made in the lawsuit then it must be filed in federal court. The distinction explained in this document between claims brought in admiralty versus claims brought at law and in personam was not discussed in *Newell*.

58. Unfortunately, many other cases have conflated or confused the concepts of forum, subject matter jurisdiction, personal jurisdiction, claims presented, and applicable law when discussing negligence claims that arose on the water.

**Further Confusion**

59. *Sellers v. Carnival Cruise Line* is an example of a court confusing personal jurisdiction and subject matter jurisdiction. 2015 WL 5778758, at *1 (NY County Civ. Ct. Aug. 31, 2015). *Sellers* discusses personal jurisdiction but incorrectly cites a case discussing the inability to waive subject matter jurisdiction. *Id*.

60. In *Fritsche v. Carnival Corp.*, the court confused all three concepts and agreed with Carnival's misleading argument that the New York court "lacked personal and subject matter jurisdiction based upon the forum selection and one-year time limitation in the contract of carriage ... ." 18 N.Y.S.3d 413, 414 (N.Y. 2d App. Div. 2015). As stated above, venue, personal jurisdiction, and

Plaintiff from other sources.

subject matter jurisdiction are independent inquiries.

## Moments of Clarity

61. Some courts have written precise opinions acknowledging the discrete concepts of venue, subject matter jurisdiction, and personal jurisdiction. *Dirks v. Carnival Cruise Lines*, 642 F. Supp. 971, 972-74 (D. Kan. 1986) (discussing difference between personal and subject matter jurisdiction).

62. In *Lieberman v. Carnival Cruise Lines*, the court correctly stated, "the applicability of a forum selection … clause is not a jurisdictional issue." 2014 WL 3906066, at *7 (D.N.J. Aug. 7, 2014) (ellipses in original).

63. Florida resident passenger claims brought in personam, similar to this case, have been dismissed by the federal court in the southern district for lack of subject matter jurisdiction. See *Siliakus v. Carnival Corp*, Case No. 1:18-cv-25137-UU (D.E. 14); *Diaz v. BPCL Management, LLC d/b/a Bahamas Paradise Cruise Line*, Case No. 18-cv-61379-BLOOM (D.E. 4 and 8).

## Plaintiff's Incident

64. Defendant owned, operated, possessed, and controlled the *LIBERTY*.

65. At all times material to this action, the vessel *LIBERTY* was located in navigable waters.

66. At all times relevant to this action, Defendant was engaged in the business of providing to the public, for compensation, vacation cruises aboard its vessel, *LIBERTY*.

67. Plaintiff was a paying passenger, lawfully aboard the ship for a multi-day cruise beginning on or about June 3, 2018.

68. The cruise traveled between at least one domestic port and one foreign port.

69. Defendant knew or should have known the ship had a dangerous deck near the hot tub.

70. Defendant knew or should have known the ship had a dangerous unsecured and/or defective hatch on the deck near the hot tub.

71. The hazard was hidden from Plaintiff because of the way the hatch appeared to be the

same material as the surrounding deck area and/or the way it was installed on the ship. The area was not marked in any manner to warn passengers of the hazard.

72. On or about June 6, 2018, Plaintiff was severely injured when she fell into an unmarked hole in the deck due to an unsecured and/or defective hatch that collapsed when she stepped on it.

73. This lawsuit is timely.

74. As a result of the incident, Plaintiff suffered injuries to her neck, back, hips and other injuries.

75. Plaintiff received medical care in the ship's medical facility and from Defendant's medical personnel.

76. Plaintiff received bad medical care from Defendant's medical facility and/or medical personnel and/or other crew/employees. The medical care was untimely and/or improper.

77. Defendant was actively involved in the design and selection and installation of the deck, the hatch and the hot tub (including hot tub access areas).

78. Defendant inspected, accepted, and approved the ship (and the deck, the hatch and the hot tub where Plaintiff was injured) before she was placed into service and after she was placed into service.

79. The hole/hatch was not marked to warn passengers of the danger of falling through.

80. The area was not blocked from passenger use at the time.

81. Defendant installed the deck, the hatch and the hot tub and regularly inspected area where Plaintiff was injured.

82. Defendant's crewmember employee(s) failed to properly secure the hatch in place prior to the subject incident.

83. Therefore, Defendant knew or should have known of the dangerous defect on the deck.

84. Defendant owed Plaintiff the non-delegable duty to provide a reasonably safe ship, including a reasonably safe deck that did not collapse when stepped upon.

## Count 1 – Negligence

85. Plaintiff incorporates paragraphs 1-84.

86. At all times material hereto, Defendant had exclusive custody and control of the above named cruise ship, including the deck, the hatch and the hot tub area where Plaintiff was injured.

87. At all times material hereto, Defendant owed a duty to their passengers, including Plaintiff, to exercise reasonable care for the health, welfare, and safety of their passengers, including the duty to exercise reasonable care to maintain and operate its cruise vessel in a reasonably safe condition.

88. At all times material hereto, Defendant, by and through its vessel, crew, agents, servants, officers, staff, and/or employees, who were acting within the scope of their employment and/or agency, undertook to create and/or design (and/or to approve the design of) and/or inspect and/or maintain, a dangerous and hazardous condition.

89. At all times material hereto, Defendant knew or, in the exercise of reasonable care, should have known that the dangers and risks associated with the deck, the hatch and the hot tub area where Plaintiff was injured would increase the likelihood of passengers being injured.

90. Plaintiff had no knowledge of the hidden dangerous condition of the deck and/or hatch that ultimately caused her harm.

91. It was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

92. On or about June 6, 2018, Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

93. Plaintiff was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

   a. Allowed an unsecured and/or dangerous hatch on the deck near the hot tub in the area of the

subject incident;

b. Negligently failed to maintain said vessel, and more particularly the deck and hatch where Plaintiff fell, in a reasonably safe condition;

c. Negligently failed to warn Plaintiff about the dangerous and unreasonably dangerous condition of the deck and/or hatch chosen by Defendant and not known to or readily observable by Plaintiff;

d. Defendant, their agents and/or employees failed to have in place warning signs to alert Plaintiff to the dangers posed by the aforesaid defective, dangerous condition of the deck and/or hatch;

e. Accepted the ship from the contractor who built it, or it maintained a hazardous condition, specifically the dangerous deck and hatch in the hot tub area where the incident occurred, in failing to maintain the subject areas of the ship in a safe condition and by failing to warn Plaintiff of the dangerous and hazardous condition of the deck and/or hatch which defendant accepted upon inspection of the completed vessel from the contractor that built the vessel and about which it had actual or constructive notice;

f. Negligently failed to properly train and/or supervise its crew members and/or employees to properly maintain the deck and/or hatch so that it would not become dangerous, so that the passengers like Plaintiff would not be injured;

g. Negligently failed to implement policies or procedures to provide effective warnings to passengers of unsafe or dangerous conditions on board.

h. Negligently failed to block off the area of the deck and/or hatch area from passenger's use;

i. Negligently failed to properly train and supervise its employees and/or crewmembers regarding warning passengers of unsafe or dangerous conditions on board;

j. Negligently failed to institute safety inspection procedures to make sure that such above-described unsafe conditions aboard said vessel, were discovered and made safe;

k. Negligently failed to properly carry out safety inspection procedures to make sure that such

above-described unsafe conditions aboard the vessel were discovered and made safe;

l.  Knew of the existence of said dangerous and defective condition or, in the exercise of reasonable care, should have known of the existence of said dangerous condition and failed to remedy the dangerous condition;

m. Knew of the existence of said dangerous and defective above-described condition, or in the exercise of reasonable care should have known of the existence of said dangerous condition and failed to adequately repair/correct the dangerous condition or to give an effective warning to any and all passengers including Plaintiff;

n.  Negligently created said above-described dangerous and defective condition by specifying, approving and/or accepting the deck, hatch and/or hot tub with knowledge of the dangerous nature, due to other falls on the same or similar deck and/or hatch on board the *LIBERTY* and/or throughout its fleet of vessels;

o.  Negligently failed to have a crewmember present to control passenger traffic in the area and to ensure hatch was properly installed and/or in place;

p.  Leaving the area in an unsafe state of disrepair without assigning a crewmember to be present to monitor/control passenger traffic through the area and/or warn of the condition;

q.  Negligently selecting the deck, hatch and/or hot tub utilized in the area where Plaintiff fell, because of the prior falls/failures on the same or similar deck and/or hatch utilized on board the *LIBERTY* and/or the other vessels throughout its fleet;

r.  Negligently failing to determine the locking mechanism was adequate and/or that the hatch was properly secured before allowing passengers to walk that area;

s.  Negligently failing to adequately complete the work in the area, including properly securing the hatch and/or blocking the area from passenger use, prior to leaving the area;

t.  Negligently failed to maintain said vessel, and more particularly the failed to specify the use of reasonably safe deck and/or hatch for use on is ship, failed to inspect and/or test the deck and/or hatch to ensure that it was properly installed and secured; and,

    u. Defendants knowing of the dangerous nature of the deck and/or hatch because of numerous prior failures on this or similar decks and/or hatches utilized by its ships throughout their fleet of vessels negligently designed, constructed, selected the deck and/or hatch upon which Plaintiff fell and/or approved the use of the deck and/or hatch.

94. Defendant were on actual or apparent notice of the danger due to prior failures on the *LIBERTY* and/or other ships in its fleet. *See, e.g., Taiariol v MSC Crocioere, S.A.*, 677 Fed. Appx. 599, 601 (11th Cir. 2017)("while Taiariol was not required to show that another passenger slipped on the same step while in the same theatre of the same ship during the same trip …she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps.").

95. Defendant were also on notice of the dangerous condition by virtue of its legal and risk management departments' investigations and defense of other substantially similar cases on a fleet wide basis. Defendant maintain computerized searchable records on a fleet-wide basis which records contain evidence of actual or constructive notice.

96. Additionally, the defective and dangerous condition was well known to Defendant because of the use of signs and/or other devices attempting to warn of the unreasonably dangerous condition of the same/similar deck and/or hatch on the *LIBERTY* and the other ships in the fleet. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015); *Frasca v. NCL (Bah.), Ltd.*, 654 Fed. Appx. 949, 954 (11th Cir. 2016)(Use of warnings allows the inference that the cruise ship operator had actual or constructive knowledge).

97. The dangerous conditions created a foreseeable zone of risk to Plaintiff.

98. Defendant knew about the dangerous conditions, or they existed long enough that Defendant should have discovered them in exercising due care, or they occurred with such frequency that Defendant was on notice of them.

99. Defendant created the dangerous conditions.

100. As a direct and proximate result of Defendant's negligence as described herein, Plaintiff sustained serious injuries, resulting in loss of function, pain and suffering, disability, disfigurement,

mental anguish, loss of income in the past and future, loss of earning capacity, the expense of medical care and treatment, aggravation of pre-existing medical conditions and loss of the capacity of enjoyment of life.  Additionally, Plaintiff lost the value of the monies paid for her cruise and/or carriage aboard Defendant's passenger cruise ship *LIBERTY*.  Plaintiff's losses are permanent and continuing in nature and she will suffer such losses in the future.

WHEREFORE, the Plaintiff, SHEILA KISSINGER, demands judgment against the Defendant for all damages which are recoverable under the General Maritime Law of the United States, the laws of the State of Florida and any other damages which she may be entitled to, pre and post judgment, interest; and, any and all other damages and remedies that the Court deems just and proper, and requests a trial by jury of all issues so triable.

                                          MEISTER LAW, LLC
                                          Courthouse Tower, Suite 750
                                          44 West Flagler Street
                                          Miami, Florida 33130
                                          Phone: (305) 590-5570
                                          Fax: (305) 675-3787

                                          By s/TonyaJMeister
                                          TONYA J. MEISTER
                                          FLORIDA BAR NO.: 0629243

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury of all of the issues triable by right.

Dated this 30th day of May, 2019.

                                          MEISTER LAW, LLC
                                          Courthouse Tower, Suite 750
                                          44 West Flagler Street
                                          Miami, Florida 33130
                                          Phone: (305) 590-5570
                                          Fax: (305) 675-3787

                                          By s/TonyaJMeister
                                          TONYA J. MEISTER
                                          FLORIDA BAR NO.: 0629243